IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
BECKLEY DIVISION

**TERRANCE D. PETTY, JR.,**                                                  **Plaintiff**

**v.**

Civil Action No.: 5:24-cv-00174

**HOWARD S. HAMRICK,**

**AND**

**WALNUT RIDGE TRUCKING, INC.,**                      **Defendants**

## COMPLAINT

COMES NOW the Plaintiff, Terrance D. Petty, Jr. ("Petty"), by counsel, and moves for judgment against Defendants, Howard S. Hamrick ("Hamrick") and Walnut Ridge Trucking, Inc. ("Walnut Ridge Trucking"), jointly and severally, on the grounds and in the amount as herein set forth:

## OVERVIEW

1. On or about April 27, 2022, Defendant Hamrick, while working as an employee or agent of Defendant Walnut Ridge Trucking, drove a westbound tractor-trailer at a high rate of speed into the rear of a 2016 Mitsubishi automobile that was traveling westbound in plain view ahead of Hamrick on Interstate 64 in Greenbrier County, West Virginia. Plaintiff Petty, who was in the 2016 Mitsubishi, sustained life-threatening, severe and permanent injuries.

1

## PARTIES

2. Petty is and at all relevant times has been a resident and citizen of the State of Indiana.

3. Hamrick is and at all relevant times has been a resident and citizen of the State of West Virginia and has continuously, regularly and systematically conducted business in that State.

4. Walnut Ridge Trucking is and at all relevant times has been a West Virginia corporation with its principal place of business in Danese in the State of West Virginia and has continuously, regularly and systematically conducted business in that State.

## JURISDICTION AND VENUE

5. This Court has personal jurisdiction over the Defendants based upon the allegations of Paragraphs 3 and 4 above.

6. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

7. Venue is properly conferred on this Court under 28 U.S.C. § 1391 because all or a substantial part of the acts, conduct, and failures to act hereinafter set forth occurred in Greenbrier County, West Virginia.

## BACKGROUND FACTS

8. On or about April 27, 2022, shortly before 9:00 a.m., Petty was operating a 2016 Mitsubishi Lancer automobile (the "Petty Vehicle") traveling westbound on Interstate 64 towards the area of Exit 181 (White Sulphur Springs) at or near mile marker 181 in Greenbrier County, West Virginia.

9. At approximately the same time and place, Hamrick was operating a 2019 Freightliner Cascadia tractor pulling an attached trailer (the "Tractor-Trailer") which was also traveling westbound on Interstate 64 in Greenbrier County, West Virginia and was some distance behind the Petty Vehicle.

10. As the Tractor-Trailer approached the area where Petty was operating the Petty Vehicle, Hamrick operated the Tractor-Trailer in such a manner that it violently crashed at a high rate of speed into the rear of the Petty Vehicle (the "Collision") while it was still traveling westbound on Interstate 64.

11. At and prior to the Collision, the Petty Vehicle had its headlights and running lights burning and also had its hazard and/or brake lights activated and flashing on the rear of the vehicle.

12. At the time and place of the Collision there were no adverse weather conditions, visibility conditions were good, and the road was dry and free of defects.

13. As Hamrick approached the area of the Collision, he had a clear, unobstructed view of the Petty vehicle from a great distance away.

14. The roadway ahead of Hamrick as he approached the area in which Hamrick struck the rear of the Petty Vehicle was straight and substantially level with no visual obstructions as shown in the Google Maps photograph attached hereto as **Exhibit A.**

15. As Hamrick approached the area of the Collision, nothing prevented him from braking, slowing down and/or from changing lanes to avoid striking the Petty Vehicle. Instead of even attempting to slow down, Hamrick sped towards the area at a speed in excess of the speed limit.

16. The Tractor-Trailer suddenly and without warning struck the rear of the Petty Vehicle with extraordinary and sudden force. Photos of the rear and side of the Petty Vehicle after the Collision are attached collectively hereto as **Exhibit B.**

17. The force of the Collision pushed the Petty Vehicle forward causing a second catastrophic impact as the Petty Vehicle struck the guardrail. Photos of the front of the Petty Vehicle after the Collision are attached collectively hereto as **Exhibit C.**

18. The Collision caused Petty life-threatening, catastrophic, severe and permanent injuries.

19. Rescue personnel responding to the scene of the crash found that Petty had sustained serious injuries as a result of the Collision requiring him to be airlifted by helicopter to Carilion Roanoke Memorial Hospital. A photograph of Petty at the scene of the Collision is attached hereto as **Exhibit D.**

20. Petty suffered significant and extensive injuries as a direct and proximate result of the Collision including, but not limited to a laceration of the spleen, numerous rib fractures, hemopneumothorax, vertebral artery dissection, a spinal cord injury, multiple transverse process fractures with dislocation and severe spinal cord compression, sternum fracture, acute blood loss anemia, multisystem blunt trauma, acute hypercapnic respiratory failure, a right auditory canal wall fracture, acute stress disorder, dissection of intracranial carotid artery, femur fracture,

humerus fracture, neurogenic shock, paralysis of the lower extremity, and multiple contusions and lacerations.

21. As a direct and proximate result of the Collision, Petty required extensive treatment in the critical care unit of Carilion Roanoke Memorial Hospital where he remained hospitalized for seventeen days following the Collision.

22. Petty has required significant care thereafter for severe injuries and/or conditions caused by the Collision and remains under active medical care at the time of filing of this Complaint.

## ALLEGATIONS REGARDING DUTIES AND REQUIREMENTS APPLICABLE TO THE DEFENDANTS

23. At all relevant times the operation of the Tractor-Trailer by Walnut Ridge Trucking and Hamrick and Hamrick's driving of the Tractor-Trailer were subject to the Federal Motor Carrier Safety Act ("FMCSA"), the Federal Motor Carrier Safety Regulations (49. C.F.R. Parts 300-399) ("FMCSRs"), the West Virginia Rules Applicable to Motor Carriers which are set forth in the West Virginia Administrative Code, Chapter 150, Series 150-9-1 through 159-9-10 (the "West Virginia Motor Carrier Safety Rules" or "WVMCSRs"), and other federal and state statutes and regulations.

24. At all relevant times the WVMCSRs provided and required, inter alia, that every commercial motor vehicle that is operated in the for-hire transportation of passengers or property by any motor carrier on the public highways of West Virginia, whether engaged in interstate or intrastate commerce, shall be operated in full compliance with "the safety rules and regulations promulgated by the U.S. Department of Transportation, Federal Highway Administration, Bureau of Motor Carrier Safety, published in Title 49 CFR parts 107, 171, 172, 173, 177, 178, 180, 325, 350, 382, 383, 385,

386, 387, 388, 389, 390, 391, 392, 393, 394, 395, 396, 397, 398, and 399 in effect on the effective date of those rules; and in Title 40 CFR part 262 in effect on the effective date of these rules."

25. At all relevant times all duties owed by a Defendant or Defendants which are alleged herein were owed to motorists and other persons using the public roadways including Petty.

26. At all relevant times each Defendant owed the duty in connection with the use, operation and driving of the Tractor-Trailer to fully comply with all applicable statutes, codes, laws, and regulations, including the FMCSRs and the WVMCSRs.

27. At all relevant times the Tractor-Trailer was a "commercial motor vehicle," Walnut Ridge Trucking was the "motor carrier" and "employer," and Hamrick was the "employee" and "driver" within the meaning of those terms under the FMCSRs and the WVMCSRs.

28. At all relevant times Walnut Ridge Trucking owned or leased the Tractor-Trailer and had the exclusive right to its custody, operation, and control.

29. At all relevant times each Defendant had a responsibility and owed a duty to use at least reasonable care under the circumstances in connection with the use, operation and driving of the Tractor-Trailer.

30. At all relevant times each Defendant knew that tractor-trailers such as the Tractor-Trailer driven by Hamrick are dangerous instrumentalities and, in light of their potential destructiveness and the extra dangers they pose to other users of the roadways, the duty of reasonable care under the circumstances requires those who operate them, including the Defendants, to exercise a high degree of care and greater precaution for the safety of other motorists using the roadways.

31. At all relevant times each Defendant had a responsibility and owed a duty to cause, require and/or allow Hamrick to operate the Tractor-Trailer only if and when he was fully and properly qualified and fit to do so in all respects.

6

32. At all relevant times each Defendant had a responsibility and owed a duty in connection with the operation, use and driving of the Tractor-Trailer to comply with all duties imposed by the common law and by federal and state statutes and regulations, including the FMCSRs, the WVMCSRs, and all traffic laws, ordinances, and regulations of the State of West Virginia.

33. At all relevant times the FMCSRs provided in 49 C.F.R. Section 390.3(a),(b),(d),&(e):

§ 390.3 General applicability.

(a) The rules in subchapter B of this chapter are applicable to all employers, employees, and commercial motor vehicles that transport property or passengers in interstate commerce.

(b) The rules in part 383 of this chapter, Commercial Driver's License Standards; Requirements and Penalties, are applicable to every person who operates a commercial motor vehicle, as defined in § 383.5 of this subchapter, in interstate or intrastate commerce and to all employers of such persons.

. . .

(d) Additional requirements. Nothing in subchapter B of this chapter shall be construed to prohibit an employer from requiring and enforcing more stringent requirements relating to safety of operation and employee safety and health.

(e) Knowledge of and compliance with the regulations.

(1) Every employer shall be knowledgeable of and comply with all regulations contained in this subchapter that are applicable to that motor carrier's operations.

(2) Every driver and employee involved in motor carrier operations shall be instructed regarding, and shall comply with, all applicable regulations contained in this subchapter.

(3) All motor vehicle equipment and accessories required by this chapter shall be maintained in compliance with all applicable performance and design criteria set forth in this subchapter.

34. At all relevant times the FMCSRs provided in 49 C.F.R. Section 390.11:

§ 390.11 Motor carrier to require observance of driver regulations.

Whenever in part 325 of subchapter A or in this subchapter a duty is prescribed for a driver or a prohibition is imposed upon the driver, it shall be the duty of

the motor carrier to require observance of such duty or prohibition. If the motor carrier is a driver, the driver shall likewise be bound.

35. At all relevant times the FMCSRs provided in 49 C.F.R. Section 391.11:

§ 391.11 General qualifications of drivers.

(a) A person shall not drive a commercial motor vehicle unless he/she is qualified to drive a commercial motor vehicle. Except as provided in § 391.63, a motor carrier shall not require or permit a person to drive a commercial motor vehicle unless that person is qualified to drive a commercial motor vehicle.

(b) Except as provided in subpart G of this part, a person is qualified to drive a motor vehicle if he/she -

. . .

(3) Can, by reason of experience, training, or both, safely operate the type of commercial motor vehicle he/she drives;

(4) Is physically qualified to drive a commercial motor vehicle in accordance with subpart E - Physical Qualifications and Examinations of this part;

(5) Has a currently valid commercial motor vehicle operator's license issued only by one State or jurisdiction;

(6) Has prepared and furnished the motor carrier that employs him/her with the list of violations or the certificate as required by § 391.27;

(7) Is not disqualified to drive a commercial motor vehicle under the rules in § 391.15; . . . .

36. At all relevant times the FMCSRs provided in 49 C.F.R. Section 383.110:

§ 383.110 General requirement.

All drivers of CMVs must have the knowledge and skills necessary to operate a CMV safely as contained in this subpart. The specific types of items that a State must include in the knowledge and skills tests that it administers to CDL applicants are included in this subpart.

37. At all relevant times the FMCSRs provided in 49 C.F.R. Section 383.111:

§ 383.111 Required knowledge.

(a) All CMV operators must have knowledge of the following 20 general areas:

8

(1) Safe operations regulations. Driver-related elements of the regulations contained in parts 391, 392, 393, 395, 396, and 397 of this subchapter, such as:
(i) Motor vehicle inspection, repair, and maintenance requirements;
(ii) Procedures for safe vehicle operations;
(iii) The effects of fatigue, poor vision, hearing impairment, and general health upon safe commercial motor vehicle operation;
(iv) The types of motor vehicles and cargoes subject to the requirements contained in part 397 of this subchapter; and
(v) The effects of alcohol and drug use upon safe commercial motor vehicle operations.

(2) Safe vehicle control systems. The purpose and function of the controls and instruments commonly found on CMVs.

(3) CMV safety control systems.
(i) Proper use of the motor vehicle's safety system, including lights, horns, side and rear-view mirrors, proper mirror adjustments, fire extinguishers, symptoms of improper operation revealed through instruments, motor vehicle operation characteristics, and diagnosing malfunctions.
(ii) CMV drivers must have knowledge of the correct procedures needed to use these safety systems in an emergency situation, e.g., skids and loss of brakes.

(4) Basic control. The proper procedures for performing various basic maneuvers, including:
(i) Starting, warming up, and shutting down the engine;
(ii) Putting the vehicle in motion and stopping;
(iii) Backing in a straight line; and
(iv) Turning the vehicle, e.g., basic rules, off tracking, right/left turns and right curves.
. . .

(7) Visual search. The importance of proper visual search, and proper visual search methods, including:
(i) Seeing ahead and to the sides;
(ii) Use of mirrors; and
(iii) Seeing to the rear.

(8) Communication. The principles and procedures for proper communications and the hazards of failure to signal properly, including:
(i) Signaling intent, e.g., signaling when changing direction in traffic;
(ii) Communicating presence, e.g., using horn or lights to signal presence; and
(iii) Misuse of communications.

9

(9) Speed management. The importance of understanding the effects of speed, including:
(i) Speed and stopping distance;
(ii) Speed and surface conditions;
(iii) Speed and the shape of the road;
(iv) Speed and visibility; and
(v) Speed and traffic flow.

(10) Space management. The procedures and techniques for controlling the space around the vehicle, including:
(i) The importance of space management;
(ii) Space cushions, e.g., controlling space ahead/to the rear;
(iii) Space to the sides; and
(iv) Space for traffic gaps.

. . .

(12) Extreme driving conditions. The basic information on operating in extreme driving conditions and the hazards encountered in such conditions, including:
(i) Bad weather, e.g., snow, ice, sleet, high wind;
(ii) Hot weather; and
(iii) Mountain driving.

(13) Hazard perceptions. The basic information on hazard perception and clues for recognition of hazards, including:
(i) Road characteristics; and
(ii) Road user activities.

(14) Emergency maneuvers. The basic information concerning when and how to make emergency maneuvers, including:
(i) Evasive steering;
(ii) Emergency stop;
(iii) Off road recovery;
(iv) Brake failure; and
(v) Blowouts.

(15) Skid control and recovery. The information on the causes and major types of skids, as well as the procedures for recovering from skids.

(16) Relationship of cargo to vehicle control. … .

. . .

(19) Mountain driving. Practices that are important when driving upgrade and downgrade, including:
(i) Selecting a safe speed;
(ii) Selecting the right gear; and

(iii) Proper braking techniques.

(20) Fatigue and awareness. Practices that are important to staying alert and safe while driving, including;
(i) Being prepared to drive;
(ii) What to do when driving to avoid fatigue;
(iii) What to do when sleepy while driving; and
(iv) What to do when becoming ill while driving.

(b) Air brakes. All CMV drivers operating vehicles equipped with air brakes must have knowledge of the following 7 areas:

. . .

(7) General operating practices and procedures, including:
(i) Proper braking techniques;
(ii) Antilock brakes;
(iii) Emergency stops; and
(iv) Parking brake.

. . . .

38.     At all relevant times the FMCSRs provided in 49 C.F.R. Section 383.113:

§ 383.113 Required skills.

. . .

(c) Safe on-road driving skills. All applicants for a CDL must possess and demonstrate the following safe on-road driving skills for their vehicle class:
(1) Ability to use proper visual search methods;
(2) Ability to signal appropriately when changing direction in traffic;
(3) Ability to adjust speed to the configuration and condition of the roadway, weather and visibility conditions, traffic conditions, and motor vehicle, cargo and driver conditions;
(4) Ability to choose a safe gap for changing lanes, passing other vehicles, as well as for crossing or entering traffic;
(5) Ability to position the motor vehicle correctly before and during a turn to prevent other vehicles from passing on the wrong side, as well as to prevent problems caused by off-tracking;
(6) Ability to maintain a safe following distance depending on the condition of the road, visibility, and vehicle weight;
(7) Ability to adjust operation of the motor vehicle to prevailing weather conditions including speed selection, braking, direction changes, and following distance to maintain control; and
(8) Ability to observe the road and the behavior of other motor vehicles, particularly before changing speed and direction.

. . .

39. At all relevant times the FMCSRs provided in 49 C.F.R. Section 392.3:

§ 392.3 Ill or fatigued operator.

No driver shall operate a commercial motor vehicle, and a motor carrier shall not require or permit a driver to operate a commercial motor vehicle, while the driver's ability or alertness is so impaired, or so likely to become impaired, through fatigue, illness, or any other cause, as to make it unsafe for him/her to begin or continue to operate the commercial motor vehicle. However, in a case of grave emergency where the hazard to occupants of the commercial motor vehicle or other users of the highway would be increased by compliance with this section, the driver may continue to operate the commercial motor vehicle to the nearest place at which that hazard is removed.

40. At all relevant times each Defendant knew, was required by law to know, and/or should have known the provisions and requirements of federal and state statutes, the FMCSRs and the WVMCSRs, including without limitation all laws and regulations quoted, cited, or referred to herein.

## COUNT I – NEGLIGENCE AND RECKLESSNESS
## AGAINST DEFENDANT HAMRICK

41. The allegations and statements contained above are incorporated by reference as if restated verbatim herein.

42. On and before April 27, 2022, Hamrick had actual and specialized knowledge, awareness and training that due to the nature and characteristics of the Tractor-Trailer and other commercial motor vehicles (including their very large size, weight, and very strong and unyielding structure), the operation of commercial motor vehicles (including the Tractor-Trailer) involved and posed heightened risks and dangers to motorists and persons using or present on or near public roadways, especially if not carefully and skillfully done.

12

43. On and before April 27, 2022, Hamrick knew that the Tractor-Trailer (due to its nature and characteristics, including its size, weight, and very strong and unyielding structure), posed serious risks and dangers to the health, lives, and safety of motorists and persons using or present on or near public roadways who were or might be affected by his operation of the Tractor-Trailer and he knew that those risks and the dangers would be especially grave in the event that he operated the Tractor-Trailer in a manner that violated the law, failed to comply with his duties of care, or was unreasonably dangerous.

44. At the time of the Collision Hamrick was under the duties to use at least reasonable care under the circumstances to:

   a. Operate a commercial motor vehicle only when he was fit, competent, and qualified to do so safely and in compliance with all applicable statutes, rules, and regulations;

   b. Keep a lookout for, give due attention to, and respond to traffic, traffic conditions, vehicles, circumstances, traffic, road conditions, obstructions, pedestrians, and/or any other conditions or circumstances which might foreseeably affect or be affected by his Tractor-Trailer (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

   c. Maintain proper visual search for and attention to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

   d. Operate the Tractor-Trailer at a lawful, reasonable and safe speed;

   e. Follow vehicles ahead of him at a safe distance and to avoid being unreasonably close to vehicles ahead of him;

f. Properly and timely apply and use the Tractor-Trailer's brakes and/or engine brakes, steering, and other equipment and devices;

g. Properly and timely use the Tractor-Trailer's horns, lights, and signals to give due and timely notice and warning to other motorists of the position and movements of the Tractor-Trailer;

h. Keep the Tractor-Trailer under proper control;

i. Refrain from driving and to stop driving the Tractor-Trailer when he was and/or was likely to become not alert, not well-rested, sleep-deprived, unduly tired, fatigued, and/or his attention was poor or impaired;

j. Comply with laws, regulations, standards, customs, usages, and practices for the safe operation of a commercial motor vehicle;

k. Reduce the speed of and change the position and movements of the Tractor-Trailer in response to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

l. Perceive, heed, take evasive action, and respond to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle), including by braking, slowing and stopping the Tractor-Trailer, changing lanes, and using the Tractor-Trailer's lights and horns to give warning; and

m. Otherwise use reasonable care in driving the Tractor-Trailer, giving due regard to all surrounding circumstances, conditions, persons, vehicles, and traffic duties, laws, rules, and regulations.

45. In violation and breach of the foregoing duties, by his actions and omissions Hamrick negligently failed to use reasonable care under the circumstances by:

   a. Operating the Tractor-Trailer at an unreasonable rate of speed as he approached the area of the Collision;

   b. Operating the Tractor-Trailer at an unlawful rate of speed as it approached the area of the Collision in violation of the speed limit and the requirements of applicable laws and regulations including W. Va. Code Ch. 17C-6-1;

   c. Continuing to operate the Tractor-Trailer at an unlawful and/or unreasonable rate of speed as he approached the Petty Vehicle;

   d. Failing to keep a proper lookout, including a proper lookout for other vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

   e. Failing to maintain proper attention to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

   f. Operating the Tractor-Trailer at a time when he was not alert and not in a proper condition to do so safely;

   g. Failing to keep the Tractor-Trailer under proper control;

   h. Failing to reduce the speed of the Tractor-Trailer in response to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle);

   i. Failing to perceive, heed, take evasive action with respect to, and respond to vehicles and conditions ahead (including the condition, lighting, position, speed, and movements of the Petty Vehicle), including by braking, slowing and stopping

        the Tractor-Trailer, changing position or lanes, and using the Tractor-Trailer's lights and horns to give warning;

j. Failing to react as a reasonable person would have reacted to avoid a Collision;

k. Failing to comply with the Federal Motor Carrier Safety Act, the FMCSRs, the WVMCSRs and other federal and state statutes and regulations; and

l. Otherwise failing to use reasonable care in driving, giving due regard to all surrounding circumstances, conditions, persons, vehicles, and traffic duties, laws, rules, and regulations.

46. By his actions and omissions alleged herein, Hamrick did in fact violate the speed limit and the duties and requirements of applicable laws and regulations including W. Va. Code Ch. 17C-6-1, the WVMCSRs (including West Virginia Code of State Rules § 150-9-4, the Federal Motor Carrier Safety Act, the FMCSRs, the WVMCSRs, and other federal and state statutes and regulations by his violation of those laws, rules, and regulations proximately caused the injuries to Petty which are alleged herein.

47. The laws, rules, and regulations referred to in the previous paragraph were enacted for public safety, Petty was a member of the class of people for whose benefit the statute was enacted, and he suffered an injury of the type against which the statute protects.

48. Hamrick acted willfully, wantonly and recklessly, and his actions and omissions demonstrated a conscious disregard for the safety of others.

49. The wrongful acts and omissions of Hamrick constitute negligence, negligence per se, gross negligence, reckless misconduct, and willful or wanton negligence which proximately caused the Collision and the injuries to Petty.

50. As a direct and proximate result of Hamrick's aforesaid wrongful actions and omissions, Petty has suffered and will suffer, and has incurred and will incur, both in the past and in the future: (a) severe, serious and debilitating physical injuries (including, without limitation, permanent injuries) and effects on his health; (b) physical pain and mental anguish; (c) disfigurement, deformity, and associated humiliation and embarrassment; (d) inconvenience; (e) expenses for medical care and treatment and related expenses; and (f) lost wages, both in the past and in the future, and loss of earning capacity.

## COUNT II – VICARIOUS LIABILITY
## AGAINST WALNUT RIDGE TRUCKING

51. The allegations and statements contained above are incorporated by reference as if restated verbatim herein.

52. At all relevant times Hamrick was an employee and/or agent of Walnut Ridge Trucking, acting within the scope and course of his employment and/or agency.

53. At all relevant times Walnut Ridge Trucking controlled and had the exclusive right to custody, possession, and operation of the Tractor-Trailer.

54. At all relevant times Walnut Ridge Trucking controlled and had the power to control Hamrick and his operation of the Tractor-Trailer.

55. At all relevant times Walnut Ridge Trucking caused, required and permitted Hamrick to operate the Tractor-Trailer.

56. At all relevant times Walnut Ridge Trucking was registered, licensed and operated as an authorized motor carrier for-hire transporting loads interstate and intrastate in exchange for payment under the U.S. Department of Transportation (DOT) No. 1195207 and Motor Carrier No. MC 478766.

57. At all relevant times Hamrick was operating the Tractor-Trailer on behalf of and under the DOT and motor carrier authority of Walnut Ridge Trucking.

58. At the time of the Collision and all relevant times prior to the Collision when Hamrick was operating the Tractor-Trailer it displayed on both doors of the tractor the name, Walnut Ridge Trucking, Inc., the U.S. Department of Transportation (DOT) No. 1195207 and the Motor Carrier No. MC 478766.

59. Walnut Ridge Trucking is liable for the negligence of Hamrick and the damages alleged herein under principles of vicarious liability, agency liability, respondeat superior liability, statutory employer liability, motor carrier liability, liability imposed under the federal leasing regulations (49 C.F.R. Part 376), and/or other principles of law and/or applicable federal and state laws, statutes, and regulations.

**WHEREFORE**, the Plaintiff, Terrance D. Petty, Jr., demands judgment, jointly and severally, against the Defendants, Howard S. Hamrick and Walnut Ridge Trucking, Inc., in an amount (in excess of the minimum jurisdictional limits of this Court) which will fully and fairly compensate Plaintiff for all damages he has suffered and will suffer, and has incurred and will incur, both in the past and in the future as a proximate result of the Collision including: (a) severe, serious and debilitating physical injuries (including, without limitation, permanent injuries) and effects on his health; (b) physical pain and mental anguish; (c) disfigurement, deformity, and associated humiliation and embarrassment; (d) inconvenience; (e) expenses for medical care and treatment and related expenses; and (f) lost wages, both in the past and in the future, and loss of earning capacity; and any and all other damages and relief as the Court or jury may see fit to award.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

**TERRANCE D. PETTY, JR.**

**By Counsel**

*/s/ Jeffrey S. Rodgers*
Jeffrey S. Rodgers (WVSB #6496)
916 Washington Street, W, Suite 2
Lewisburg, WV 24901
Telephone: (304) 647-5587
*rodgerslawfirm@yahoo.com*

John C. Shea (VSB #17436)
*(pro hac vice pending)*
Tara A. Enix (VSB #88983)
*(pro hac vice pending)*
Marks & Harrison, P.C.
1500 Forest Avenue, Suite 100
Richmond, VA 23229
Telephone: (804) 282-0999
Facsimile: (804) 288-1853
*jshea@marksandharrison.com*
*tenix@marksandharrison.com*